## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

MIGUEL ANGEL GARCIA CANO,　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Petitioner,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　Case No. CIV-25-01228-JD
　　　　　　　　　　　　　　　　　　)
RUSSELL HOLT, et al.,　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　　　Respondents.　　　　　　 )

## <u>ORDER</u>

Courts across the country are seeking to determine on federal habeas review under

28 U.S.C. § 2241 whether an alien who is pending removal proceedings is entitled to a

bond hearing.[1] Miguel Angel Garcia Cano's ("Petitioner") § 2241 Petition for Writ of

Habeas Corpus presents that question to the Court ("Petition"). [Doc. No. 1].[2]

Respondents United States Attorney General Pamela Bondi, United States Secretary of

the Department of Homeland Security Kristi Noem, and United States Immigration and

Customs Enforcement Field Office Director Russell Holt (together "Government") filed a

---

[1] The Court uses "alien" in this order, as that is the word used to describe someone of Petitioner's status in the applicable statutes. *See* 8 U.S.C. § 1101(a)(3) ("The term 'alien' means any person not a citizen or national of the United States."). Congress wrote these statutes many years ago. *See infra* n.9. And while the Court understands some modern case law uses "noncitizen" instead of "alien," because this is a case of statutory construction, the Court uses Congress's language.

[2] In this order, the Court uses page numbering from the CM/ECF stamp across the top of the district court docket.

Response in Opposition to the Petition for Writ of Habeas Corpus.[3] [Doc. No. 9].
Petitioner replied to the Government's opposition. [Doc. No. 11]. The Court referred the
matter to United States Magistrate Judge Shon T. Erwin, who entered a Report and
Recommendation. ("R. & R.") [Doc. No. 12]. The Government filed objections. [Doc.
No. 13].

The Court begins with the relevant statutory text. The opening provision of 8
U.S.C. § 1225(a)(1) states that "[a]n alien present in the United States who has not been
admitted or who arrives in the United States . . . shall be deemed for purposes of this
chapter an applicant for admission." Section 1225(b)(2)(A) then provides that "in the
case of an alien who is an applicant for admission, if the examining immigration officer
determines that an alien seeking admission is not clearly and beyond a doubt entitled to
be admitted, the alien shall be detained" for removal proceedings, without bond. 8 U.S.C.
§ 1225(b)(2)(A). By contrast, § 1226(a) authorizes detention of any "alien" "[o]n a
warrant issued by the Attorney General" and permits release on bond pending removal.
*Id.* § 1226(a).

While most courts agree that district courts have jurisdiction under § 2241 to
resolve the issue, courts have taken diverging paths in statutory interpretation in

---

[3] Petitioner additionally names Scarlet Grant, Warden of the Cimarron Correctional Facility, as a defendant in her official capacity. While the Government does not represent Warden Grant (and she has not entered an appearance or response in this action), the Government submits that her "interests in this litigation are contractually derivative of the federal respondents' interests," making "a separate response from Warden Grant . . . [un]necessary." [Doc. No. 9 at 7 n.1].

answering the bond hearing question.[4] The Supreme Court and United States Court of

Appeals for the Tenth Circuit have not spoken; thus, this Court has no binding precedent

to apply in answering the question about whether Petitioner is entitled to a bond hearing.[5]

---

[4] The Court is aware that multiple courts of appeals are currently examining the issue, as of the filing of this order. The Tenth Circuit has several appeals currently pending raising this issue. *See infra* n.5. Other circuits also have appeals pending with this issue. *See, e.g.*, *Lopez-Campos v. Raycraft, et al.*, Consolidated Appeal, No. 25-1965 (6th Cir.) (filed Oct. 27, 2025); *Avila v. Bondi, et al.*, Case No. 25-3248 (8th Cir.) (filed Nov. 10, 2025); *Alvarez v. Warden, et al.*, Consolidated Appeal, Lead Case No. 25-14065 (11th Cir.) (filed Nov. 18, 2025); *Garcia v. Guadian, et al.*, Consolidated Appeal, Lead Case No. 25-7044 (4th Cir.) (filed Dec. 17, 2025); *Barbosa da Cunha v. Lyons*, No. 25-3141 (2d Cir.) (filed Dec. 12, 2025). Although new orders are being issued daily, the Court's most recent research indicates that only the Fifth and Seventh Circuits have examined the interplay between §§ 1225 and 1226, with the remaining orders being from district courts. *See Castanon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1060–62 (7th Cir. 2025) (in a request over a stay pending appeal relating to a 2022 consent decree, stating the arguments over §§ 1225 and 1226 were waived by the consent decree but also "likely to fail on the merits too" and then proceeding to examine in dicta); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502–03 (5th Cir. 2026) (holding that unadmitted aliens present in the United States are "applicants for admission" subject to mandatory detention without bond under § 1225(b)(2)(A) because "seeking admission" is not an independent requirement but is necessarily entailed by the statutorily deemed status of "applicant for admission"). District court orders, while they may be persuasive, do not create any binding precedent. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)). The Court considered the Seventh Circuit's dicta in *Castanon-Nava*, which follows the R. & R.'s analysis in terms of "applicant for admission" and "seeking admission." Ultimately, for the reasons explained, the Court follows the analysis in *Buenrostro-Mendez*, which largely tracks this Court's prior reasoning in a similar case. *See Montoya v. Holt*, No. 25-CV-01231-JD, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025).

[5] The cases pending before the Tenth Circuit raising this issue currently include: *Marin v. Baltazar, et al.*, No. 26-1060 (10th Cir.) (filed Mar. 3, 2026) (appeal of District Court of Colorado granting habeas relief); *Garcia v. Holt, et al.*, No. 26-6026 (10th Cir.) (filed Feb. 9, 2026) (same issue arising from appeal of the Western District of Oklahoma granting habeas relief); *Quiroz v. Grant, et al.*, No. 26-6019 (10th Cir.) (filed Jan. 28, 2026) (appeal of the Western District of Oklahoma denying habeas petition).

The majority of district courts have granted bond hearings, reasoning that § 1225(b)(2)(A)'s use of "applicant for admission" alongside "alien seeking admission" means that mandatory detention applies only to the subset who are presently "seeking admission"—that is, those actively arriving. Those courts bolster that conclusion by pointing to potential surplusage issues created in § 1226(c)(1). Under this construction, the statutory scheme present in 8 U.S.C. §§ 1225 and 1226 creates an implied third category of immigrants: Unadmitted aliens who are not seeking admission.

In contrast, a growing minority of courts have reached the opposite conclusion. Under their view, § 1225(a)(1)'s definition of "applicant for admission" unambiguously encompasses all aliens "present in the United States who ha[ve] not been admitted" without temporal or geographic limitation. Those courts have also reasoned that the better reading of the statute imputes the state of "seeking admission" to all applicants for admission.

Judge Erwin produced a well-drafted R. & R. reflecting the reasoning adopted by most federal district courts addressing these emerging statutory questions. The Court adopts the portion of the R. & R. finding that the Court has jurisdiction. But the Court takes a different path on the statutory questions and respectfully rejects the portion of the R. & R. holding that Petitioner is detained under 8 U.S.C. § 1226 rather than § 1225.[6]

---

[6] The Court's first duty is to the rule of law, and to misplace that duty would undermine our system of ordered liberty. The Court takes no solace in the human realities on the other end of its pen.

Section 1225 of title 8 of the United States Code contemplates only (1) aliens who have been lawfully admitted and (2) aliens who are applicants for admission. The statute does not create a third "non-seeking applicant" category, and the "applicant for admission" category explicitly includes both arriving and present unadmitted aliens. The statute gives no temporal or geographic limitations on the status of being an applicant for admission. And the statute itself unambiguously shows that all applicants for admission are seeking admission.

Moreover, there are prudential reasons to hesitate at the path embraced by most courts thus far. Creating an undefined "non-seeking applicant" immigration category presages further judicial gloss. How does a court determine when an unadmitted alien is no longer an "applicant for admission" or "seeking admission?" Is two years of unadmitted residence long enough? Three? How far must an alien travel from the border? 50 miles? 100? If an alien has been in the interior a short time but resides far away from the border, can the distance make up for a short duration? Or, if an alien lives close to the border but resides in the country for decades, can the time period make up for the short distance?

These important questions sound in the province of an elected Congress rather than an unelected judge. This Court limits itself to the plain meaning of the law. For the reasons explained below, the Court denies Petitioner's statutory violation claim and dismisses the due process violation claim with leave to amend.

## I.    **FACTUAL BACKGROUND**

Petitioner is a Mexican citizen who has resided in the United States since 2004. [Doc. No. 1 ¶¶ 15, 40]. United States Immigration and Customs Enforcement ("ICE") detained Petitioner in August 2025. *Id.* ¶¶ 15, 41; [Doc. No. 9 at 14]. Petitioner is charged as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for entering without inspection. [Doc. No. 1 ¶ 42].

Following his arrest, ICE issued a custody determination continuing Petitioner's detention without bond. *Id.* ¶ 44. Petitioner was unable to request bond due to the Board of Immigration Appeals' ruling in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). *Id.* ¶¶ 15, 45. Petitioner remains detained at the Cimarron Correctional Facility in Cushing, Oklahoma. *Id.* ¶ 41.

Thus, Petitioner filed his Petition in this Court, challenging the lawfulness of his detention without a bond hearing and asserting statutory and due process violation claims. Petitioner seeks (1) an order restricting transfer during the pendency of this action;[7] (2) a show cause order against the Government; (3) a declaration "that Petitioner's detention is unlawful"; (4) attorney's fees and costs; and  (5) release or,

---

[7] The Petition is not styled as an application for a temporary restraining order.

alternatively, a bond hearing to determine whether he presents a flight risk or danger to the community. *Id.* at 13–14.

## II.    LEGAL STANDARDS

### A.    Reports and Recommendations

When a magistrate judge issues a report and recommendation on a dispositive motion, the district judge "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1). "[A] party may serve and file specific written objections to the proposed findings and recommendations" within fourteen days after being served with a copy of the magistrate judge's report. Fed. R. Civ. P. 72(b)(2). The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). That the district judge performs a "de novo determination" does not mandate additional or repeat evidentiary hearings. *United States v. Raddatz*, 447 U.S. 667, 674 (1980).

### B.    Writs of Habeas Corpus

The writ of habeas corpus is available to those held "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). And § 2241(c)(3) generally gives district courts jurisdiction over challenges to the legality of an alien's detention. *Rasul v. Bush*, 542 U.S. 466, 483 (2004); *see also Soberanes v.*

*Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) ("Challenges to immigration detention are properly brought directly through habeas.").

## III.   <u>ANALYSIS</u>

The Court first examines whether 8 U.S.C. § 1252 bars this Court's jurisdiction. Although the Government did not expressly object to the R. & R.'s conclusion that the Court has jurisdiction to review Petitioner's § 2241 Petition,[8] the Court sua sponte examines its jurisdiction and agrees with the R. & R. that it has jurisdiction.

The Court next analyzes whether the Government may detain Petitioner under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A) or must instead proceed under the bond-eligible framework of 8 U.S.C. § 1226(a).[9] Here, the Court interprets the language of the statutes and explains why the text counsels a different conclusion than that reached by the R. & R.

The Court then turns to whether Petitioner's detention violates the Due Process Clause of the Fifth Amendment. Although the R. & R. did not reach this issue because of its analysis on statutory interpretation, the Court reaches this issue raised in the Petition

---

[8] The Government states in its objections that it "expressly reasserts and does not waive the arguments set forth in the Response." [Doc. No. 13 at 6] (citing Doc. No. 9). Regardless of the lack of any express objections to the R. & R.'s analysis on the Court's jurisdiction to hear the Petition, the Court has an independent obligation to examine that issue.

[9] These statutes, part of the Immigration and Nationality Act ("INA"), took most of their current form in 1996 with Congress's passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 3009 (1996).

and dismisses this claim as insufficient on the pleading standards but with leave to amend.

### A.    The Court has jurisdiction to decide Petitioner's § 2241 Petition.

Petitioner alleges the Court has jurisdiction under the plain language of 28 U.S.C. § 2241(c)(3) and because Petitioner is being held in a locale within the bounds of this district. [Doc. No. 1 ¶¶ 8–10]; *see also* 28 U.S.C. § 2241(a) ("Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions."); *id.* § 116(c). The Government argues the Court lacks jurisdiction via the jurisdiction stripping and channeling provisions of 8 U.S.C. § 1252(a)(5), (b)(9), and (g). *See* [Doc. No. 9 at 16–19]. The R. & R. found jurisdiction. *See* [Doc. No. 12 at 4–7].

The Government contends that the following provisions from 8 U.S.C. § 1252 channel the Petition to the court of appeals:

> Notwithstanding any other provision of law . . . including section 2241 of Title 28, or any other habeas corpus provision . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter.

8 U.S.C. § 1252(a)(5).

> Judicial review of all questions of law and fact . . . arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order [of removal] under this section. . . . [N]o court shall have jurisdiction, by habeas corpus under section 2241 of Title 28 . . . to review such an order or such questions of law or fact.

*Id.* § 1252(b)(9).

The Government also contends that § 1252(g) completely strips the Court of jurisdiction. That provision reads in relevant part as follows:

> notwithstanding . . . section 2241 of Title 28, or any other habeas corpus provision . . . no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien . . . .

*Id.* § 1252(g).

The Government argues the jurisdiction channeling provisions apply because "[t]he decision to effectively begin th[e] proceedings [against Petitioner] via § 1225(b)(2)(A) . . . is integral to the removal proceedings" and that it is "a question of law that can be reviewed by the appropriate court of appeals as part of any appeal of a final order of removal." [Doc. No. 9 at 16]. The Government also argues the jurisdiction stripping provision applies because Petitioner "expressly challenges the basis of the *commencement* of proceedings against him," which goes to the Department of Homeland Security's ("DHS") "election to *commence* proceedings under § 1225(b)(2)(A)" rather than § 1226. *Id.* at 18, 32.

The R. & R. found the jurisdiction channeling provisions inapplicable, reasoning that "Petitioner is only challenging the way his detention is being conducted—the lack of bond hearing." [Doc. No. 12 at 5] (citing *Ferry v. Gonzales*, 457 F.3d 1117, 1131 (10th Cir. 2006) (holding that § 1252(a)(5) does "not eliminate a district court's jurisdiction to review habeas petitions challenging an alien's detention")). Relying on the Supreme Court's analysis in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), the R. & R. concluded that § 1252(b)(9) does not present a jurisdictional bar where, as here, "Petitioner is not

asking the Court to review a removal order (which has not been issued), or [the Government's] decision to detain him or seek his removal." *Id.* Thus, according to the R. & R., "the Court is not reviewing any part of the process by which [the Government] will determine his eligibility for removal." *Id.* at 5–6 (citing *Jennings*, 583 U.S. at 294–95, and *Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *4 (D. Colo. Oct. 22, 2025)).

Regarding the jurisdiction stripping provision, the R. & R. pointed to the Supreme Court's reasoning in *Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471 (1999), to support its view that the Petition "falls outside the narrow jurisdictional limitations of § 1252(g)." *Id.* at 6. In *Reno*, the Supreme Court said that § 1252(g)'s jurisdictional bar is narrow and "applies only to three discrete actions"—the commencement of removal proceedings, adjudication of removal proceedings, and execution of removal orders. 525 U.S. at 482. And, as noted by the R. & R., the Supreme Court recognized that it was "implausible" that "the mention of three discrete events along the road to deportation was . . . a shorthand way of referring to all claims arising from deportation proceedings." [Doc. No. 12 at 6] (quoting *Reno*, 525 U.S. at 482).

Indeed, the Supreme Court in *Jennings* held that § 1252(b)(9) was inapplicable because the petitioners in that case were not "asking for review of an order of removal; . . . challenging the decision to detain them in the first place or to seek removal; . . . [or] challenging any part of the process by which their removability will be determined." 583 U.S. at 294. *Jennings* invoked *Reno*'s reasoning on § 1252(g) in the *Jennings* Court's own treatment of § 1252(b)(9), stating that with "capacious phrases like

11

'arising from,'" the Supreme Court has "eschewed 'uncritical literalism'" allowing for an

expansive reading beyond the discrete actions laid out in the statute. 583 U.S. at 293–94

(quoting *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)). This narrow

construction must apply here as well. That Petitioner is not challenging the detention

itself is evident by his averment that his detention falls under § 1226(a) rather than

§ 1225(b)(2)(A). [Doc. No. 1 ¶ 5]. Both statutes contemplate detention during removal

proceedings; the key difference is that the former affords a bond hearing while the latter

does not.

     The Government's citation to an Eleventh Circuit case applying § 1252(g) to a

*Bivens* claim does not change the analysis. [Doc. No. 9 at 17] (citing *Alvarez v. U.S.*

*Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016)). While the Eleventh

Circuit in *Alvarez* held that § 1252(g) "prevents [courts] from considering whether the

agency should have used a different statutory procedure to initiate the removal process,"

that argument cannot collapse the distinction between a challenge to detention without

bond and a challenge to an agency's choice to commence removal proceedings. 818 F.3d

at 1203. This is especially so where the Supreme Court has counseled against precisely

that kind of "'uncritical literalism'" applied to the "capacious" phrase "arising from."

*Jennings*, 583 U.S. at 293–94 (quoting *Gobeille*, 577 U.S. at 319). A challenge to a

manner of detention based on statutory construction cannot be transformed into a

challenge to an agency's decision to commence proceedings.

     Considering the Supreme Court's consistent use of an exceedingly narrow

construction on the jurisdiction channeling and stripping provisions, and that this Court is

bound to follow Supreme Court precedent as it exists and should not expand the analysis where the Court itself has not done so,[10] the Court agrees with the R. & R. that those provisions do not block the Court's jurisdiction. The Court accepts the R. & R. to this extent.

### B.    Petitioner is properly detained under 8 U.S.C. § 1225(b)(2)(A).

The statutory question boils down to whether Petitioner may be held under the mandatory detention provisions of 8 U.S.C. § 1225(b)(2)(A), or if he instead must be detained under 8 U.S.C. § 1226(a), under which he would be entitled to a bond hearing. The Court proceeds to examine (1) whether Petitioner is an applicant for admission, (2) whether Petitioner is seeking admission, and (3) whether statutory overlap between § 1225(b)(2)(A) and § 1226(c)(1) counsels a different interpretation.

#### 1.    Petitioner is an applicant for admission.

Petitioner argues that he "is not an 'applicant for admission'" at all, much less one "seeking admission." [Doc. No. 11 at 6–7]; *see also* [Doc. No. 1 ¶¶ 5, 22, 38–39, 48]. The Government, in contrast, contends that Petitioner "does not advance a meaningful argument as to why he is not an 'applicant for admission'" under § 1225(a)(1) and that he qualifies as an "applicant for admission" because he is an "alien present in the United States who has not been admitted." [Doc. No. 9 at 10–11].

Section 1225(a)(1) states:

---

[10] Courts must "leav[e] to th[e] [Supreme] Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989).

An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission.

The R. & R. acknowledged the technical definition of "applicant for admission," noting that "[w]hile the undersigned [magistrate judge] may agree with that technical interpretation, that does not mean Petitioner is subject to mandatory detention under § 1225(b)(2)(A)." [Doc. No. 12 at 11]. The R. & R. reinforced this through § 1225's titular reference to "expedited removal of inadmissible *arriving* aliens," positing that the "[u]se of the term 'arriving' to describe [aliens] clarifies that the section governs the entrance of [aliens] to the United States." *Id.* at 10. On this, the Court respectfully disagrees with its colleague.

Instead, the Court starts with the "fundamental principle of statutory interpretation," *Rotkiske v. Klemm*, 589 U.S. 8, 14 (2019), that courts "ordinarily resist reading words or elements into a statute that do not appear on its face," *Bates v. United States*, 522 U.S. 23, 29 (1997). "Atextual judicial supplementation is particularly inappropriate when . . . Congress has shown that it knows how to adopt the omitted language or provision." *Rotkiske*, 589 U.S. at 14.

The R. & R.'s reasoning that "Congress's enactment of § 1225 was for a specific, limited purpose" focused on "arriving aliens" reads in a temporal limitation on the state of being an "applicant for admission." [Doc. No. 12 at 13]. But Congress omitted from § 1225(a)(1) and (b)(2)(A) any such temporal limitation. That omission takes on increased significance considering Congress *did* include a temporal limitation elsewhere

14

in the statute—one pertaining to asylum claims and expedited removal proceedings. 8

U.S.C. § 1225(b)(1)(A)(iii). "It is not [this Court's] role to second-guess Congress'

decision" to intentionally omit such words of limitation. *Rotkiske*, 589 U.S. at 14.

The Government also correctly points out that the R. & R.'s focus on § 1225's title

is misplaced. [Doc. No. 13 at 15–16]. First, titles of laws "cannot substitute for the

operative text of the statute." *Id.* at 15 (quoting *Fla. Dep't of Revenue v. Piccadilly

Cafeterias, Inc.*, 554 U.S. 33, 47 (2008)). Second, by focusing on the middle part of

§ 1225's title, "expedited removal of inadmissible arriving aliens," the R. & R. failed to

appreciate the next part: "referral for hearing." This latter portion encompasses aliens

subject to § 1225(b)(2)(A), who are "referr[ed]" to a removal hearing under § 1229a. *Id.*

at 16. In contrast, the middle title phrase "expedited removal of inadmissible arriving

aliens" refers to aliens subject to § 1225(b)(1), who do *not* receive a removal hearing. *Id.*

The lack of a removal hearing is what makes the removal "expedited." 8 U.S.C.

§ 1225(b)(1).

The R. & R. made the same mistake in saying that "section[] [1225's]

subheadings" are "all related to 'arriving' noncitizens." [Doc. No. 12 at 10]. Naturally,

§ 1225(b)(1)'s subheading reads "[i]nspection of aliens arriving in the United States and

certain other aliens who have not been admitted or paroled." *Id.* (quoting 8 U.S.C.

§ 1225(b)(1)). That subheading title is unsurprising—as explained, a particular subset of

"arriving" applicants for admission are subject to expedited removal under § 1225(b)(1).

And § 1225(d)'s listing of port-specific inspection powers is unsurprising considering

most inspections presumably take place at ports, and obviously aliens presenting at ports

are indeed "arriving." *Id.* at 10.[11] But the other subheadings make no reference to "arriving" aliens alone, indicating that § 1225(a)(1)'s prefatory use of "present" operates in those sections, § 1225(b)(2)(A) included.

In sum, the R. & R.'s analysis hinged on a removal provision not at issue in this case to infer that § 1225(a)(1)'s use of the word "present" has no real meaning. The Court disagrees with that construction. Petitioner is an applicant for admission under the plain language of § 1225(a)(1) because he is present in the United States and charged with being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection. [Doc. No. 1 ¶ 42; Doc. No. 9 at 14; Doc. No. 12 at 2].

But § 1225(b)(2)(A) also uses the phrase "seeking admission." That phrase is the next subject of inquiry.

### 2.    Applicants for admission are seeking admission.

In concluding that § 1225 "primarily 'applies to noncitizens who [are] presently and actively seeking lawful entry into the United States . . . at the border,'" the R. & R. also focused on § 1225(b)(2)(A)'s use of the phrase "an alien seeking admission." [Doc. No. 12 at 11–12] (quoting *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *2 (W.D. Okla. Nov. 20, 2025)) (citation omitted). As above, the R. & R. applied legitimate structural canons, but it applied those canons to address ambiguities that are resolved on their own terms. Before invoking structural canons of interpretation, the

---

[11] Further, any suggestion that § 1225 does not apply to aliens entering other than through a port of entry is contradicted by the plain text of § 1225(a)(1), which specifically covers "present" and "arriv[ing]" aliens regardless of "whether or not" they enter "at a designated port of arrival." 8 U.S.C. § 1225(a)(1).

Court must first determine whether the text explains the relationship between "applicant for admission" and "alien seeking admission" so as to avoid contradicting the plain text of § 1225(a)(1). *See United States v. Rentz*, 777 F.3d 1105, 1110 (10th Cir. 2015) (contrasting a preferred "reading of the statute" that "like most good [readings][,] flows from plain . . . grammar" with a disfavored reading that "requires some sophisticated syntactical somersaults").

a)   Section 1225(a)(3) creates a logical category relationship between the phrases.

Here, § 1225(a)(3) explains how the contested phrases relate. Specifically, "applicants for admission or otherwise seeking admission" creates a formal logical relationship between the two concepts. 8 U.S.C. § 1225(a)(3).

The Government correctly points to § 1225(a)(3), which requires inspection of "all aliens 'who are applicants for admission or otherwise seeking admission.'" [Doc. No. 9 at 28] (quoting 8 U.S.C. § 1225(a)(3)). The Government quotes *United States v. Woods*, 571 U.S. 31, 45 (2013), to argue that the word "or" in § 1225(a)(3) "introduce[s] an appositive—a word or phrase that is synonymous with what precedes it ('Vienna or Wien,' 'Batman or the Caped Crusader')." [Doc. No. 9 at 28–29]. The Government argues the use of an appositive with "applicant for admission" and "otherwise seeking admission" shows Congress treats the phrases as synonymous. *Id.* at 28.

Although the R. & R. did not directly engage with this "appositive" argument, other district courts have rejected it, stating that "the case cited by [the government] to suggest that the word 'or' 'introduce[s] an appositive' actually says that the opposite is

17

generally true." *Romero v. Hyde*, 795 F. Supp. 3d 271, 284 n.31 (D. Mass. 2025); *see Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1327 n.7 (W.D. Wash. Sept. 30, 2025) (same). Those cases quote the portion of *Woods* that explains the "ordinary use [of 'or'] is almost always disjunctive." 571 U.S. at 45.

And indeed, "or" is not *really* an appositive here. Section 1225(a)(3) does not indicate the phrases are truly synonymous, because "applicants for admission" is a noun phrase and "seeking admission" is a category applicable to applicants for admission as well as other aliens. Strictly speaking, a noun phrase and a category encompassing that noun phrase are not synonyms because the latter is broader than the former.

The better reading starts with the period-correct definitions of "otherwise," which are "[i]n a different manner; in another way, or in other ways." *Otherwise*, Black's Law Dictionary (6th ed. 1990). Those definitions imply that the condition preceding "otherwise" shares a category with the condition following it.

Two examples show the impact of the word "otherwise" in "applicants for admission or otherwise seeking admission." 8 U.S.C. § 1225(a)(3).[12] Consider an inventory list that includes the following two entries:

(1) "Animals that are housecats or otherwise canine."

(2) "Animals that are housecats or otherwise feline."

---

[12] The words following "otherwise seeking admission," which are "or readmission to or transit through the United States," simply repeat and clarify the substance of "otherwise seeking admission." 8 U.S.C. § 1225(a)(3). Including the entire phrase would bring the same analysis, and so the Court uses the shorter "otherwise seeking admission" for ease of reading.

The first entry is absurd—no canines are housecats, or vice versa. But the second entry makes sense because the word "otherwise" creates a formal logical syllogism, and that syllogism is valid. Not all felines are housecats, but all housecats are feline. And critically, housecats are housecats in the first instance, involuntarily. Using the plain language definition of "otherwise" in the context of an involuntary legal status, the preceding noun must share the condition that follows.[13]

Now apply this logic from the start: Section 1225(a)(1) "deem[s]" "an alien present in the United States who has not been admitted . . . an applicant for admission." The statute imposes a status by operation of law. Section 1225(a)(3) then says "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission" shall be inspected. The word "otherwise" establishes that "aliens . . . seeking admission" is the category to which "applicants for admission" belong. "Applicants for admission" are subject to inspection because they fall within the broader class of those "seeking admission." So the statute necessarily treats "seeking admission" as a condition that attaches to anyone deemed an "applicant for admission."

And because § 1225(a)(1) imposes that label on every "alien present in the United States who has not been admitted," the condition of "seeking admission" is likewise imposed. "Seeking" does not describe what the alien is voluntarily doing or the alien's

---

[13] To object that § 1225(a)(3)'s syllogism is invalid is an objection to be heard by Congress, not the Court. Congress's determination that all "applicants for admission" are "seeking admission" is not facially absurd, and so the Court must take Congress at face value. To conclude otherwise creates a third category of aliens having undefined legal status—a result contrary to both the text and common sense.

mindset. The alien is "seeking admission" in the same way the alien is "an applicant for admission"—by congressional decree.

So, all "applicants for admission" are "seeking admission." The former is sufficient (but not necessary) for the latter, and the latter is necessary (but not sufficient) for the former. Congress used a straightforward logical syllogism. Stated another way, § 1225(a)(3) leaves open the possibility that some aliens who are not applicants for admission may nonetheless be "seeking admission." But it does *not* leave open the possibility that some "applicants for admission" are not "seeking admission."[14]

Other district courts that have grappled with § 1225(a)(3) have seemingly sidestepped the word "otherwise" by failing to appreciate the involuntary legal nature of being an "applicant for admission." For example, in *Romero v. Hyde*, the United States District Court for the District of Massachusetts used two example statutes to show why the Government's reading did "not follow from the text." 795 F. Supp. 3d at 284–85; *see also* [Doc. No. 1 ¶ 33] (citing *Romero v. Hyde*). The court in *Romero* compared § 1225(a)(3)'s inspection requirement to a statute requiring "[a]ll craftsmen . . . who are carpenters or otherwise woodworking" to be inspected by workplace safety personnel. *Id.* at 285. The court then compared § 1225(b)(2)(A)'s removal provision to a statute fining "craftsmen woodworking" for failing to wear eye protection. *Id.* The *Romero* court

---

[14] If the statute contained indicia of temporal or geographic limitation on the state of being an "applicant for admission," this might lend the structural inference that § 1225 pertains only to aliens inspected at or near the border, close in time to their entry. But as § 1225(a)(1) unambiguously encompasses both those "present" and "arriving," the Court must defer to the statute's plain language.

reasoned that "no reasonable person" would think the carpenter could be fined for "not wearing his safety goggles *when not woodworking*." *Id.* (emphasis added). And so the court concluded that "the mandatory detention provision" of § 1225(b)(2)(A) "applies only if the . . . applicant . . . is 'seeking admission.'" *Id.* (citation omitted).

But that reasoning ignores the fact that no law "deems" someone a "carpenter." Unlike a volitional occupation, the law "deem[s]" an "alien present in the United States who has not been admitted" an "applicant for admission." 8 U.S.C. § 1225(a)(1). Section 1225(a)(3)'s inspection requirement for "[a]ll aliens . . . who are applicants for admission or otherwise seeking admission" does not contemplate voluntary statuses.

Moreover, the formal syllogistic relationship created in § 1225(a)(3) must apply to § 1225(b)(2)(A)'s use of the same phrases. Neither Petitioner nor the R. & R. provides a reason to "abandon [the] usual presumption that 'identical words used in different parts of the same statute' carry 'the same meaning.'" *Henson v. Santander Consumer USA, Inc.*, 582 U.S. 79, 85 (2017) (quoting *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005)). And courts "do 'not lightly assume that Congress silently attaches different meanings to the same term in the same . . . statute[.]'" *U.S. Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 614 (2020) (quoting *Azar v. Allina Health Servs.*, 587 U.S. 566, 574 (2019)).

Petitioner, for his part, does not address § 1225(a)(3). And the R. & R. addressed it only in passing, asserting that the provision "supports th[e] distinction," between § 1225's purported operation only on "arriving" aliens, versus § 1226's operation on those "present." [Doc. No. 12 at 8–14]. The R. & R. invoked language from the Supreme Court's holding in *Jennings*, "noting that §§ 1225(b)(1) and (b)(2) 'authorize[] the

21

Government to detain certain aliens seeking admission into the country' and that §§ 1226(a) and (c) 'authorize[] the Government to detain certain aliens already in the country pending the outcome of removal proceedings.'" *Id.* at 13 (quoting *Jennings*, 583 U.S. at 289).[15]

The R. & R. instead reasoned that "[t]he plain meaning of the phrase 'seeking admission' [in § 1225(b)(2)(A)] requires that the applicant must be presently and actively seeking lawful entry," because "the present participle in § 1225(b)(2)(A) implies action— something that is currently occurring." [Doc. No. 12 at 13] (quoting *Caballero v. Baltazar*, No. 25-cv-03120-NYW, 2025 WL 2977650, at *6 (D. Colo. Oct. 22, 2025)). Although not made explicit, that plain language grammatical reasoning implies a meaningful variant canon argument: it assumes that § 1225 does not define "seeking admission" like it does with "applicant for admission." The meaningful variant canon states "where [a] document has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Southwest Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (alteration in original) (quoting Antonin Scalia & Bryan Garner, *Reading Law* 170 (2012)).

The R. & R. simply missed the significance of the word "otherwise." Because § 1225(a)(3) creates a logical category relationship between "applicant for admission"

---

[15] The R. & R. also quoted dicta from *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001), regarding the impact of physical entry on due process rights, which is inapplicable to the statutory question. [Doc. No. 12 at 13–14].

and "alien . . . seeking admission," the Court has no occasion to apply the meaningful

variant canon to § 1225(b)(2)(A)'s use of the phrases. Petitioner is seeking admission.

> b) Section 1225(a)(4) specifies the process for ceasing to be an
> applicant for admission.

Even if § 1225(a)(3) did not create a formal syllogistic relationship between

"applicant for admission" and "seeking admission," § 1225(a)(4) provides more reasons

to read all "applicants for admission" as necessarily "seeking admission."

In the same subsection deeming an "alien present in the United States who has not

been admitted" as an "applicant for admission," 8 U.S.C. § 1225(a)(1), the statute also

describes the circumstances under which an alien may withdraw his or her application,

§ 1225(a)(4). That provision, titled "Withdrawal of application for admission," states

"[a]n alien applying for admission may . . . at any time, be permitted to withdraw the

application for admission and depart immediately from the United States." *Id.*

A plain language reading of the phrase "*applicant* for admission" alongside the

phrase "*application* for admission" lends the inference that the "application" to be

"withdraw[n]" is that of the "applicant for admission." *Id.* (emphasis added). This in turn

lends the straightforward inference that "applicants for admission" apply for admission

until taking the actions prescribed under § 1225(a)(4).

Although neither the Petitioner nor the R. & R. addresses § 1225(a)(4), that

provision implies that Petitioner and the R. & R. would read all "applicants for

admission" as "applying" for admission yet not necessarily "seeking" admission. But this

simply cannot be. What individual is "applying" for a given legal status without "seeking" such a status?

Even without the impact of § 1225(a)(3), the better reading would be to take the phrase "alien seeking admission" in the same way writers frequently use multiple descriptors for a single subject. Two hypothetical statutes illustrate this:

> (1) In the case of a felon in possession of a firearm, the arresting officer shall verify the criminal record of a felon in possession of a firearm within 24 hours of arrest.

> (2) In the case of a felon in possession of a firearm, the arresting officer shall verify the criminal record of a felon having a firearm within 24 hours of arrest.

The latter provision cannot rationally imply a category of felons who "possess" a firearm yet do not actively "have" the firearm on their person after the arrest. No one would argue that the officer's duty to check the felon's criminal record arises only if the felon *keeps* the gun on his person *after* the arrest. Such a reading would denigrate the express and plain purpose of the hypothetical statute to require verification of an arrestee's felonious history prior to being charged as a felon in possession. Everyone who "possesses" an object "has" that object. And everyone legally "applying" for admission is also legally "seeking" admission.

### c) Section 1225(b)(2)(A)'s sentence structure indicates reference, not modification.

The structure of § 1225(b)(2)(A)'s removal provision further suggests equivalent usage. The prefatory language, "in the case of an alien who is an applicant for admission," sets the scope of what follows. 8 U.S.C. § 1225(b)(2)(A). Had Congress

meant to imply a category of applicants for admission who might not be seeking admission, the natural manner of doing so would read "in the case of an alien who is *both* an applicant for admission *and seeking admission*." Instead, the phrase "alien seeking admission" comes after the operative language, "if the examining immigration officer determines." *Id.* This structure indicates that "alien seeking admission" *refers* to the prior subject—it does not imply *modification* of the prior subject.

Moreover, any appearance of suboptimal drafting disappears with § 1225(a)(3)'s establishment of a categorical relationship between the phrases "applicants for admission" and "aliens . . . seeking admission."[16] Section 1225(b)(2)(A) can use those phrases as categorically equivalent to one another because the statute itself explains how the phrases are categorically equivalent to one another. A statute's use of differing phrases does not mandate categorically *distinct* meanings where the phrases' categorical *equivalence* is explicitly established elsewhere within the same statute.[17] Stated another

---

[16] Even in the presence of inartful drafting, the fact remains that "[s]ometimes drafters *do* repeat themselves and *do* include words that add nothing of substance, either out of a flawed sense of style or to engage in the ill-conceived but lamentably common belt-and-suspenders approach." Antonin Scalia & Bryan Garner, *Reading Law* 176–77 (2012). And in such cases the surplusage canon ought not apply, lest "[a] clever interpreter could create unforeseen meanings or legal effects from this stylistic mannerism." *Id.* at 177. To create an undefined third immigration status based on a single instance of the phrase "alien seeking admission" (as a referent to a prefatory subject) would be precisely this kind of "unforeseen meaning[] or legal effect[]." *Id.*

[17] Alternatively, if not all applicants for admission are necessarily "seeking admission," Petitioner's (1) long-term residence in the United States and (2) his five United States citizen children "ranging in age from five to twelve years old" suggest that Petitioner *is* seeking admission. [Doc. No. 1 ¶ 43]; *see also* [Doc. No. 9 at 30] (stating an "alien unlawfully present in the country for 20 years was nonetheless an 'applicant for admission'" (citation omitted)). The Government also points to Petitioner's application

way, when the text shows that a variant is not meaningful, the meaningful variant canon

has no application. *See Southwest Airlines*, 596 U.S. at 457–58 (applying the canon only

where the term used is "materially different").

### 3. *Partial overlap with § 1226(c)(1) does not override § 1225's unambiguous text.*

Finally, statutory overlap in relation to 8 U.S.C. § 1226(c)(1) cannot overcome the

evident meaning of § 1225. Still, the Court examines these arguments to explain why

§ 1225(b)(2)(A) does not render superfluous § 1226(c)(1)(A) and (c)(1)(D). The Court

also explains why redundancy in § 1226(c)(1)(E) cannot contradict the unambiguous

meaning of § 1225.

First, parts (A) and (D) of § 1226(c)(1) still operate when an alien is erroneously

found admissible. This is because the statutes referenced in parts (A) and (D) of

§ 1226(c)(1) apply to "any alien." 8 U.S.C. § 1182(a)(2), (a)(3)(B). If an applicant for

admission is erroneously admitted, he or she is no longer subject to § 1225. Such an alien

may later be found to have been inadmissible in the first instance under parts (A) and (D)

of § 1226(c)(1). To define or narrow the scope of a statute does not render it superfluous.

The Laken Riley Act's addition of part (E) to § 1226(c)(1) does create some

redundancy, though not total superfluity. The R. & R. highlighted that § 1226(c)(1)(E)

"mandates that ICE 'shall take into custody' any noncitizen who is . . . inadmissible under

§ 1182(a)(6)(A)(i)," [Doc. No. 12 at 14], and that statute in turn covers aliens "present in

---

for cancellation of removal as indicative of Petitioner seeking admission. *See* [Doc. No. 9
at 15] (citing Doc. No. 9-5); *see also* [Doc. No. 13 at 14–15].

the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i).

Although § 1226(c)(1)(E) only imposes the no-bond provision if the unadmitted alien

commits one of a list of specific crimes, redundancy might be present given "an alien

present in the United States without admittance would be unlikely to prove that they are

'clearly and beyond a doubt entitled to be admitted'" within the meaning of

§ 1225(b)(2)(A). [Doc. No. 12 at 14–15] (quoting *Pizarro Reyes v. Raycraft*, No. 25-cv-

12546, 2025 WL 2609425, at *5 (E.D. Mich. Sept. 9, 2025)).

The Government also acknowledges that the "provisions have overlap much like a

Venn diagram," but argues "they are not perfectly overlapping so as to make a provision

superfluous." [Doc. No. 13 at 20]. The Government explains that § 1226(c)(1)(E) applies

to *all* aliens who commit certain *crimes*, while § 1225(b)(2)(A) reaches *only* applicants

for admission *regardless* of criminal history. *See id.* ("[Section] 1226(c)(1)(E) mandates

detention for a group of [aliens] that includes a narrow subset of applicants for admission

that may also be subject to § 1225(b)(2)(A) detention."). The Government also argues

that the provisions employ distinct enforcement mechanisms: "Section 1225(b)(2)(A)

allows detention upon encountering an immigration agent and § 1226(c) provides for

detention by the issuance of a warrant. Two *different* routes to detention . . . ." *Id.* at 20–

21; *see also* [Doc. No. 9 at 26] (same); *cf. SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 364

(2018) ("And just as Congress' choice of words is presumed to be deliberate and

deserving of judicial respect, so too are its structural choices." (citation modified)).

Lastly, the Government invokes *Barton v. Barr* for the proposition that even if some

overlap exists, "[r]edundancy in one portion of a statute is not a license to rewrite or

eviscerate another portion of the statute contrary to its text." [Doc. No. 13 at 20] (quoting *Barton v. Barr*, 590 U.S. 222, 239 (2020)).

While overlap is present, *total* superfluity is not. The critical nuance resides in the fact that the statutes do more than impose rules on aliens—they also impose duties on the Executive. Section 1226(c) compels the Attorney General to actively "take into custody" aliens who commit certain crimes. Section 1225(b)(2)(A) mandates "detention" upon contact with an "examining immigration officer," but without an affirmative mandate to seek out and "take into custody." That means the Attorney General has discretion regarding whether to detain a non-criminal unadmitted alien in the first instance. *See Coronado v. DHS*, 1:25-CV-831, 2025 WL 3628229, at *11 (S.D. Ohio Dec. 15, 2025). The result is that § 1226(c)(1)(E) does not apply to all applicants for admission who are subject to § 1225(b)(2). Redundancy remains as to the applicants for admission, but § 1226(c)(1)'s impact on the substantive obligations of the Attorney General means the provision is not surplusage.

The R. & R. "overstates the significance of statutory surplusage or redundancy." *Rimini St., Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019); *see* [Doc. No. 12 at 14–15]. As the Supreme Court has explained, "[r]edundancy is not a silver bullet. . . . Sometimes the better overall reading of the statute contains some redundancy." *Rimini St.*, 586 U.S. at 346. Such is the case here. Like most interpretive devices, "[t]he canon against surplusage is not an absolute rule," *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 385 (2013), and interpretative devices are "pretty weak when applied to acts of Congress enacted at widely separated times," *Abdullah v. Am. Airlines, Inc.*, 181 F.3d 363, 373 (3d

Cir. 1999) (citation omitted). In that light, § 1225's unambiguous language denies the Court "license to . . . eviscerate" the word "present" from the statute's opening definition. *Barton*, 590 U.S. at 239; 8 U.S.C. § 1225(a)(1). And Congress's intentional and selective use of "arriving" similarly prohibits the Court from imputing that term to every subsection of § 1225.

The recency of § 1226(c)(1)(E)'s passage does not mandate a contrary result. Certainly, a later congressional enactment can help resolve statutory ambiguity when it accords with original meaning. But the Supreme Court "ha[s] often observed . . . 'the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.'" *South Dakota v. Yankton Sioux Tribe*, 522 U.S. 329, 355 (1998) (quoting *United States v. Phila. Nat'l Bank*, 374 U.S. 321, 348–49 (1963)). The Court's inquiry must still center on the meaning of § 1225(b)(2)(A) when it was passed in 1996, as "the whole point of having [a] written statute[]" is that it "ha[s] a single, best meaning[,] [and that] 'meaning is fixed at the time of enactment.'" *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024) (quoting *Wis. Cent. Ltd. v. United States*, 585 U.S. 274, 284 (2018) (emphasis omitted)).

And in 1997, the Executive promulgated a regulation stating that "[d]espite being applicants for admission, aliens who are present without having been admitted or paroled . . . will be eligible for bond and bond redetermination." *Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). The initial decision to give bond hearings to applicants for admission explicitly reflected an exercise

of agency discretion.[18] And the statutory propriety of denying bond hearings under

§ 1225(b)(2)(A) went without judicial inquiry until now for the simple reason that "the

judicial power of federal courts is constitutionally restricted to cases and controversies."

*Flast v. Cohen*, 392 U.S. 83, 94 (1968) (internal quotations omitted).

In sum, § 1225 unambiguously deems Petitioner an "applicant for admission" who

is "seeking admission."[19] A restrained approach accepts statutory overlap before it will

invent an immigration status by inserting words that Congress deliberately omitted.

### C.    Petitioner fails to allege a due process violation.

Because the R. & R. recommended the Court grant the Petition on statutory

grounds, it naturally declined to reach the merits of Petitioner's due process ground for

---

[18] The Court recites this regulation to recount the past actions of the Executive, not to suggest that the regulation controls the meaning of the statute. *Cf. SAS Inst. Inc. v. Iancu*, 584 U.S. 357, 363 (2018) ("Where a statute's language carries a plain meaning, the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer.") (citing *Soc. Sec. Bd. v. Nierotko*, 327 U.S. 358, 369 (1946)).

[19] Petitioner claims that "Courts have uniformly rejected" the Government's "new interpretation." [Doc. No. 1 ¶ 34]. But that is not accurate, at least not anymore. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *see, e.g.*, *Montoya v. Holt*, No. 25-CV-01231-JD, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025); *Coronado v. DHS*, No. 1:25-cv-831, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025); *Ugarte-Arenas v. Olson*, No. 25-C-1721, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025); *Hernandez Cruz v. Noem*, No. 8:25-cv-02566-SB-MAA, 2025 WL 3482630 (C.D. Cal. Dec. 2, 2025); *Valencia v. Chestnut*, 809 F. Supp. 3d 1064 (E.D. Cal. Nov. 17, 2025); *Cabanas v. Bondi*, No. 4:25-cv-04830, 2025 WL 3171331 (S.D. Tex. Nov. 13, 2025); *Altamirano Ramos v. Lyons*, 809 F. Supp. 3d 1015 (C.D. Cal. Nov. 12, 2025); *Olalde v. Noem*, No. 1:25-cv-00168-JMD, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025); *Oliveira v. Patterson*, No. 6:25-cv-01463, 2025 WL 3095972 (W.D. La. Nov. 4, 2025); *Sandoval v. Acuna*, No. 6:25-cv-01467, 2025 WL 3048926 (W.D. La. Oct. 31, 2025); *Rojas v. Olson*, No. 25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025); *Vargas Lopez v. Trump*, 802 F. Supp. 3d 1132 (D. Neb. Sept. 30, 2025); *Chavez v. Noem*, 801 F. Supp. 3d 1133 (S.D. Cal. Sept. 24, 2025).

relief. As the Court departs from the R. & R.'s statutory conclusion, it must now reach that ground.

On the due process claim, Petitioner's claim consists of (1) one case quotation, (2) the statement that "being free from official restraint" is "a fundamental [liberty] interest," (3) a summary of the Fifth Amendment, and (4) the conclusion that the Government's "detention of Petitioner without a bond redetermination hearing . . . violates his right to due process." [Doc. No. 1 ¶¶ 51–53]. The Government argues this "broad claim" is "not well developed" and without basis. [Doc. No. 9 at 32].

The Court agrees with the Government. Petitioner's "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements" fails to satisfy his pleading standard. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (invoking pleadings standards in habeas context).

However, the underlying material facts of the Petition may have changed with respect to the length of Petitioner's detention. The Tenth Circuit has counseled toward granting leave to amend where a party "can correct the defect in the pleading or state a claim for relief." *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (quoting 6 Wright & Miller's Federal Practice & Procedure § 1483 (2d ed. 1990)); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.").

31

Dismissal for failure to meet a pleading standard is without prejudice to refiling, so no prejudice occurs to Respondents. Moreover, the Court sees no indication of "undue delay, bad faith or dilatory motive" on the part of the Petitioner. *Foman*, 371 U.S. at 182. For these reasons, the Court will grant leave to amend on the due process ground for relief.

## IV.   **CONCLUSION**

For these reasons, the Court ACCEPTS IN PART and REJECTS IN PART the Report and Recommendation. The Court accepts the Report and Recommendation to the extent it finds the Court has jurisdiction over this matter and otherwise declines the remainder. The Court DENIES Cano's Petition for Writ of Habeas Corpus on Count 1, Violation of the INA. The Court further DISMISSES Cano's Petition for Writ of Habeas Corpus on Count 2, Violation of Due Process, and grants leave to amend on that count only within **14 days** of this order or **March 30, 2026**.[20] Should Petitioner not file an amended petition by March 30, 2026, the Court will promptly enter its judgment denying Count 1 and dismissing Count 2 without prejudice.

IT IS SO ORDERED this 16th day of March 2026.

_____
JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[20] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241" for a federal inmate. *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).